**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**AT KNOXVILLE**

| | | |
|---|---|---|
| JOSEPH DEION PAGE,<br><br>Plaintiff,<br><br>v.<br><br>JOSHUA HEAD, ROGER MASON, and JONATHAN LIMON,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No.: 3:26-CV-490-DCLC-JEM |

**MEMORANDUM AND ORDER**

The Court is in receipt of a pro se prisoner's complaint under 42 U.S.C. § 1983 [Doc. 2] and motion for leave to proceed *in forma pauperis* [Doc. 1]. For the reasons set forth below, the Court **GRANTS** Plaintiff's motion [Doc. 1], permits certain claims to **PROCEED** against Defendants Head and Limon in their respective individual capacities, and **DISMISSES** all remaining claims and Defendants.

## I. PLAINTIFF'S MOTION TO PROCEED *IN FORMA PAUPERIS*

Under the Prison Litigation Reform Act ("PLRA"), a prisoner bringing a civil action may apply for permission to file suit without prepaying the filing fee. *See* 28 U.S.C. § 1915(a). A review of Plaintiff's motion [Doc. 1] demonstrates that he lacks sufficient financial resources to pay the filing fee in a lump sum. Accordingly, pursuant to 28 U.S.C. § 1915, the Court **GRANTS** Plaintiff's motion to proceed as a pauper [*Id.*].

The Court **ASSESSES** Plaintiff the civil filing fee of $350.00. The custodian of Plaintiff's inmate trust account **SHALL** submit to the Clerk, U.S. District Court, 800 Market Street, Suite 130, Knoxville, Tennessee, 37902 twenty percent (20%) of Plaintiff's preceding monthly income (or income credited to Plaintiff's trust account for the preceding month), but only when such

monthly income exceeds ten dollars ($10.00), until the full filing fee of three hundred fifty dollars ($350.00) as authorized under 28 U.S.C. § 1914(a) has been paid to the Clerk. 28 U.S.C. § 1915(b)(2).

The Court **DIRECTS** the Clerk to send a copy of this Order to the Court's financial deputy and the custodian of inmate trust accounts at Plaintiff's current facility to ensure compliance with the PLRA's requirements for payment of the filing fee.

## II. PLAINTIFF'S COMPLAINT

### A. Screening Standard

Under the PLRA, district courts must screen prisoner complaints and *sua sponte* dismiss any claims that are "frivolous, malicious, or fail[] to state a claim upon which relief may be granted," or "seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B); *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). The dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure to state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)" of the Federal Rules of Civil Procedure. *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (citations omitted). Thus, to survive an initial review under the PLRA, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Courts should liberally construe pro se pleadings filed in civil rights cases and hold them to a less stringent standard than lawyer-drafted pleadings. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Even so, allegations that give rise to a mere possibility that a plaintiff might later establish undisclosed facts supporting recovery are not well-pled and do not state a plausible claim.

*Twombly*, 550 U.S. at 555, 570. Further, formulaic and conclusory recitations of the elements of a claim which are not supported by specific facts are insufficient to state a plausible claim for relief. *Iqbal*, 556 U.S. at 681.

To state a claim under 42 U.S.C. § 1983, a plaintiff must plausibly allege that a person acting "under color of" state law deprived him of a federal right. 42 U.S.C. § 1983.

**B. Plaintiff's Allegations**

Plaintiff, an inmate in the custody of the Tennessee Department of Correction ("TDOC"), has been housed in the high security housing unit at the Morgan County Correctional Complex ("MCCX") for nearly three years because of concerns for his safety in general population [Doc. 2 p. 8]. On July 23, 2026, while Correctional Officer ("CO") Joshua Head was working Plaintiff's pod, Defendant Head told Plaintiff, "Page[,] shut up you police ass bitch" [*Id.* at 6]. Defendant Head said this loudly enough for everyone in the pod to hear it, causing other inmates to "comment, laugh[,] and threaten Plaintiff" [*Id.*].

Plaintiff has never been a confidential informant, nor has he ever been a police officer [*Id.*]. Defendant Head's comments therefore not only created a dangerous environment for Plaintiff, they were slanderous [*Id.*]. And this is not the first problem Plaintiff has had with Defendant Head [*Id.* at 7]. On February 18, 2026, Plaintiff was placed on property restriction without due process, and Defendant Head was one of the officers who came to remove Plaintiff's property from the cell [*Id.*]. The following day, Defendant Head walked by Plaintiff's cell and "stuck up his middle finger" at Plaintiff [*Id.*]. Just a week or so prior, Defendant Head had commended Plaintiff "for not being a 'problem' lately" [*Id.*]. When Plaintiff told Defendant Head that is because he had a parole hearing coming up soon, Defendant Head responded, "[D]on[']t worry about that, me and Officer Alderman can fix that" [*Id.*]. This meant that they would conspire to get Plaintiff's parole

denied [*Id.*]. And although "he didn[']t follow through to do it," Defendant Head's "comments still caused Plaintiff mental anguish" [*Id.*].

Plaintiff filed a grievance against Defendant Head on July 27, 2026 [*Id.* at 8]. On August 10, 2026, Unit Manager Roger Mason filed a response as Defendant Head's supervisor [*Id.*]. Four days later, Defendant Mason issued Plaintiff a disciplinary charge for refusing a cell assignment ("RCA") [*Id.*]. Defendant Mason was on notice that Plaintiff was held in a high security unit because of concerns for Plaintiff's safety yet "tried to move Plaintiff to the most dang[er]ous part of the prison" [*Id.*].

By issuing Plaintiff a disciplinary charge only four days after he responded to Plaintiff's grievance against Defendant Head, Defendant Mason retaliated against Plaintiff [*Id.* at 9]. On August 14, 2026, Sergeant Daniels asked Plaintiff if he was moving to his new cell assignment, and Plaintiff responded that he was not due to the lack of safety in general population [*Id.*]. Plaintiff gave Sergeant Daniels two documents that, pursuant to TDOC policy, "should have triggered a protective services investigation" [*Id.*]. Instead, the documents were given to Defendant Mason, who told Plaintiff "he lost them[,] possibly to his shredder" [*Id.*].

On August 18, 2026, Disciplinary Hearing Officer Jonathan Limon found Plaintiff guilty of refusing a cell assignment and imposed the following punishment: a $4.00 fine, 30 days punitive time, 30 days commissary restriction, and 9 months of property package restriction [*Id.* at 10]. Defendant Limon came to Plaintiff's housing unit on August 27, 2026, and delivered Plaintiff an appeal packet [*Id.*]. He also offered Plaintiff's neighbor, who was issued a disciplinary charge for fighting, 5 days punitive time, 5 days commissary restriction, and 6 month package restriction [*Id.* at 10–11]. When Plaintiff asked why he received a harsher punishment than his neighbor, Defendant Limon stated it was because Plaintiff chose to have a disciplinary hearing [*Id.* at 11].

Aggrieved by these events, Plaintiff filed the instant action seeking monetary damages against Defendants in an amount that "depends on the outcome of [Plaintiff's] other lawsuits[1]" [*Id.* at 12].

**C. Analysis**

**1. Section 1983 Claims**

Plaintiff does not specify whether he is suing Defendants in their official capacities, their individual capacities, or in both capacities [*See id.*]. Generally, "[a]bsent a specification of capacity, it is presumed that a state official is sued in his [or her] official capacity." *Northcott v. Plunkett*, 42 F. App'x 795, 796 (6th Cir. 2002) (citing *Wells v. Brown*, 891 F.2d 591, 593 (6th Cir. 1989)). Nevertheless, out of an abundance of caution, the Court will presume Plaintiff intends to sue all Defendants in both their individual and official capacities.

**a. Official-Capacity Claims**

By seeking relief against any individual Defendant in his official capacity, Plaintiff is actually seeking suit against the entity "of which the officer is an agent." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978) ("[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent."); *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (holding "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity"). Here, that is the TDOC, which is an arm of the State of Tennessee. *See Hix v. Tenn. Dep't of Corrs.*, 196 F. App'x 350, 355 (6th Cir. 2006) (holding TDOC is equivalent of the "State"). But a State is not a person subject to suit under § 1983. *Will*

[1] Plaintiff states he has lawsuits pending in this Court in the following civil actions: *Page v. Hutson*, No. 3:26-cv-38 and *Page v. Gregg*, 1:26-cv-239 [Doc. 2 p. 2, 4].

*v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983.").

Moreover, the Eleventh Amendment typically "bars all suits, whether for injunctive, declaratory or monetary relief, against the state and its departments." *Thiokol Corp. v. Mich. Dep't of Treasury*, 987 F.2d 376, 381 (6th Cir. 1993) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100–01 (1984)). Because there has not been congressional abrogation or waiver of immunity, Plaintiff's claims against Defendants in their official capacities are otherwise barred by the Eleventh Amendment. *See, e.g., Quern v. Jordan*, 440 U.S. 332, 345 (1979) (finding § 1983 does not waive state sovereign immunity); *Berndt v. State of Tennessee*, 796 F.2d 879, 881 (6th Cir. 1986) (holding Tennessee has not waived immunity to suit under § 1983). Thus, Plaintiff's § 1983 claims against Defendants in their official capacities are impermissible and will be dismissed.

**b. Individual-Capacity Claims**

To state a claim against a defendant in his personal capacity, a plaintiff must adequately plead that the particular defendant, through his own actions, has violated the Constitution. *Iqbal*, 556 U.S. at 676; *see also Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (providing that "a complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights" to state a claim upon which relief may be granted). This requirement exists because constitutional liability cannot attach to a defendant solely based on his or her position of authority. *See Iqbal*, 556 U.S. at 676 ("[O]ur precedents establish . . . that Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."); *Monell*, 436 U.S. at 691 (finding that liability under § 1983 may not be imposed merely because a defendant "employs a tortfeasor"). The Court considers Plaintiff's § 1983 allegations against each Defendant in turn.

### 1. CO Joshua Head

Plaintiff labels his challenges to Defendant Head's alleged conduct as Eighth Amendment violations [Doc. 2 p. 6]. The facts he alleges implicate additional constitutional provisions, however, as he maintains that Defendant Head (1) endangered Plaintiff by calling him "police"—synonymous with a "rat" or "informant" in the earshot of other inmates; (2) deprived Plaintiff of his property without due process; (3) antagonized Plaintiff by sticking up his middle finger at Plaintiff; and (4) threatened to make sure Plaintiff's parole got denied [*Id.* at 6, 7].

Courts have long acknowledged that being labeled a "snitch" in prison can violate an inmate's Eighth Amendment rights. *Turner v. Long*, No. 23-5685, 2024 WL 3029249, at *5 (6th Cir. June 17, 2024) (noting it undisputed that telling other inmates a prisoner is a confidential informant states a constitutional claim under the Eighth Amendment); *Comstock v. McCrary*, 273 F.3d 693, 699 n.2 (6th Cir. 2001) (acknowledging that "[b]eing labeled a 'snitch' was dreaded, because it could make the inmate a target for other prisoners' attacks"); *Reece v. Groose*, 60 F.3d 487, 491 (8th Cir. 1995) (recognizing inmate's reputation as a snitch places him at risk of injury at the hands of other inmates); *Benefield v. McDowall*, 241 F.3d 1267, 1271–72 (10th Cir. 2001) (holding allegations that correctional officer labeled a prisoner a snitch stated an Eighth Amendment claim). Therefore, Plaintiff's allegation that Defendant Head called him a "police ass bitch" in front of other inmates will proceed against Defendant Head in his individual capacity.

However, Plaintiff's remaining allegations do not state additional actionable claims against Defendant Head. Defendant Head's alleged threats against Plaintiff and/or his alleged antagonizing conduct, while unprofessional and unnecessary, do not constitute "punishment" in the constitutional sense or otherwise raise a constitutional issue. *See Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987). Therefore, these allegations fail to state a claim under § 1983.

And as to Plaintiff's allegation that he was placed on property restriction without due process, Plaintiff offers no facts to support this conclusory assertion. Because Plaintiff has not pled any facts in support of this claim that "'state a claim to relief that is plausible on its face[,]'" any intended due process claim against Defendant Head will be dismissed. *Iqbal*, 556 U.S. at 678.

**2. Unit Manager Roger Mason**

Next, Plaintiff maintains that Defendant Mason retaliated against him for filing a grievance against Defendant Head, as evidenced by the fact that Plaintiff was issued a disciplinary charge for refusing a cell assignment a mere four days after Defendant Mason issued his supervisor's response [Doc. 2 p. 8–9]. He also alleges that he gave two documents to Sergeant Daniels, and that these documents should have triggered an investigation under TDOC policy, but Defendant Mason "lost them, possibly to his shredder" [*Id.* at 9].

Taking Plaintiff's last allegation against Defendant Mason first, it is under whether (1) Defendant Mason told Plaintiff that he had lost the two documents, and Plaintiff suggests that Defendant Mason shredded them; or (2) Defendant Mason told Plaintiff both that he lost the documents and that he possibly shredded them. It is ultimately immaterial to the disposition of this claim, however, because these allegations do not implicate a constitutional right. This is because a prisoner has no right to an investigation. *Mitchell v. McNeil*, 487 F.3d 374, 378 (6th Cir. 2007) (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)) ("There is no statutory or common law right, much less a constitutional right, to an investigation."). This is true even if an investigation was warranted pursuant to TDOC policies, because TDOC policies do not provide a prisoner with any protected right. *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest).

Accordingly, even if TDOC policy would have required a protective services investigation based on the documents produced by Plaintiff, Defendant Mason's failure to "trigger" the investigation pursuant to policy does not implicate a constitutional right. Therefore, the Court will dismiss any claims based on these allegations.

However, Plaintiff also lodges a retaliation claim against Defendant Mason. By way of reminder, Plaintiff alleges that four days after Defendant Mason issued his supervisor's response to the grievance Plaintiff filed against Defendant Head, Defendant Mason issued Plaintiff a disciplinary infraction for refusing a cell assignment despite his knowledge of the hazards Plaintiff would face in general population [Doc. 2 p. 8–9]. A plaintiff states a colorable retaliation claim by plausibly alleging that (1) he "engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X*, 175 F.3d at 394. To satisfy the "adverse action" requirement, a prison inmate must show more than de minimis harm by establishing that "the adverse action is one that would 'deter a person of ordinary firmness' from the exercise of the right at stake." *Id.* at 396 (quoting *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982)). Plaintiff's subjective belief that he has been retaliated against is insufficient to state a claim. *Johnson v. Rodriguez,* 110 F.3d 299, 310 (5th Cir. 1997).

Here, the Court presumes Plaintiff filed a non-frivolous grievance in accordance with prison regulations, and thus, it presumes he engaged in protected activity by doing so. *Hill*, 630 F.3d at 472; *Herron v. Harrison,* 203 F.3d 410, 415 (6th Cir. 2000). And a disciplinary charge is an adverse consequence. *See, e.g., Thomas v. Eby*, 481 F.3d 434, 441 (6th Cir. 2007) (recognizing that a misconduct ticket can constitute an adverse action because the potential consequences of a

conviction could deter an inmate from engaging in protected conduct); *Brown v. Crowley,* 312 F.3d 782, 789 (6th Cir. 2002) ("The issuance of the major misconduct charge subjected [the prisoner] to the risk of significant sanctions."). But Plaintiff's retaliation claim against Defendant Mason fails at the third element. Plaintiff seemingly relies on the four-day span of time between the issuance of the supervisor's response and the disciplinary charge as proof of retaliatory animus. But Plaintiff's protected conduct was the filing of the grievance, not Defendant Mason's response to it. And in the absence of any other facts to suggest retaliatory conduct, any temporal proximity between Defendant Mason's response and the disciplinary charge against Plaintiff is insufficient to plausibly allege causation. *See Annabel v. Washington*, No. 24-1425, 2024 WL 4766187, at *3 (6th Cir. Oct. 2, 2024) ("[T]emporal proximity, by itself, is insufficient to show a retaliatory motive."). Here, Plaintiff has not pled any facts to support a conclusion that Defendant Mason's actions were motivated by retaliatory animus to state a retaliation claim, and this claim will be dismissed. *See Hill*, 630 F.3d at 475 (holding "conclusory allegations of [a] retaliatory motive unsupported by material facts will not be sufficient" to state a § 1983 claim); *see also Cantley v. Armstrong*, 391 F. App'x 505, 507 (6th Cir. 2010) (affirming district court's holding that a prisoner's complaint was insufficient to demonstrate a causal relationship between protected activity and adverse action because "'bare allegations of malice on the defendants' parts are not enough to establish retaliation claims' that will survive § 1915A screening" (quoting *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001))).

**3. Disciplinary Hearing Officer Jonathan Limon**

Plaintiff also alleges retaliation by Defendant Limon. Specifically, he alleges that he received significantly harsher disciplinary penalties for refusing his cell assignment because he exercised his right to a disciplinary hearing, and that Defendant Limon confirmed that Plaintiff's

conduct was the reason for the adverse action taken. The Court finds these allegations sufficient to state a plausible retaliation claim against Defendant Limon, and this claim will proceed against him.

### 2. State-Law Claims

Plaintiff also raises the "state tort of defamation/slander" against Defendant Head, alleging that Defendant Head's labeling of Plaintiff as "police" was "meant to injure Plaintiff['s] reputation" [Doc. 2 p. 5–6].

Slander is spoken defamation. *Quality Auto Parts Co., Inc. v. Bluff City Buick Co.*, 876 S.W.2d 818, 821 (Tenn. 1994). And to establish a case of defamation, a plaintiff must prove that a party (1) "published a statement; (2) with knowledge that the statement [wa]s false and defaming to the other; or (3) with reckless regard for the truth of the statement or with negligence in failing to ascertain the truth of the statement." *Sullivan v. Baptist Mem'l Hosp.*, 995 S.W.2d 569, 571 (Tenn. 1999). Injury to a person's "reputation for good character with the public . . . is necessary for an actionable claim of defamation." *Davis v. The Tennessean*, 83 S.W.3d 125, 130 (Tenn. Ct. App. 2001). But being labeled as a member of law enforcement and/or cooperative with police does not malign a person's good character with the public. But even if the Court were to find that the alleged conduct did subject plaintiff to "public hatred, contempt or ridicule" so as to constitute a "serious threat to [his] reputation, *Ali v. Moore*, 984 S.W.2d 224, 229 (Tenn. Ct. App. 1998), Plaintiff has not pled any injury as a result of the alleged conduct so as to state a claim, *see Memphis Publishing Co. v. Nichols*, 569 S.W.2d 412, 418–21 (Tenn. 1978). Accordingly, Plaintiff's state-law claims for defamation and slander will be dismissed.

## III. CONCLUSION

For the reasons set forth above:

1. Plaintiff's motion for leave to proceed *in forma pauperis* [Doc. 1] is **GRANTED**;

2. Plaintiff is **ASSESSED** the civil filing fee of $350.00;

3. The custodian of Plaintiff's inmate trust accounts is **DIRECTED** to submit the filing fee to the Clerk in the manner set forth above;

4. Plaintiff has stated a plausible Eighth Amendment claim against Defendant Head in his individual capacity and a plausible First Amendment claim against Defendant Limon in his individual capacity, and these claims will **PROCEED**;

5. The Clerk is **DIRECTED** to send Plaintiff service packets (a blank summons and USM 285 form) for Defendants Head and Limon;

6. Plaintiff is **ORDERED** to complete the service packets and return them to the Clerk's Office within twenty-one (21) days of entry of this Order;

7. At that time, the summonses will be signed and sealed by the Clerk and forwarded to the U.S. Marshal for service, *see* Fed. R. Civ. P. 4;

8. Plaintiff is **NOTIFIED** that if he fails to timely return the completed service packets, this action **will be** dismissed;

9. Defendants shall answer or otherwise respond to the complaint within twenty-one (21) days from the date of service. If any Defendant fails to timely respond to the complaint, it may result in entry of judgment by default against that Defendant;

10. All other claims and Defendants are hereby **DISMISSED**; and

11. Plaintiff is **ORDERED** to immediately inform the Court and Defendants or their counsel of record of any address changes in writing. Pursuant to Local Rule 83.13, it is the duty of a pro se party to promptly notify the Clerk and the other parties to the proceedings of any change in his address, to monitor the progress of the case, and to prosecute or defend the action diligently. E.D. Tenn. L.R. 83.13. Failure to provide a correct address to this Court within fourteen (14) days of any change in address may result in the dismissal of this action.

**SO ORDERED.**

**ENTER:**

s/Clifton L. Corker
United States District Judge